DENTONS US LLP
Laura Leigh Geist (Bar No. 180826)
laura.geist@dentons.com
1999 Harrison Street, Suite 1300
Oakland, California 94612
Cynthia Liu (Bar No. 263270)
cynthia.liu@dentons.com
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California  94105
Telephone:     (415) 882-5000
Facsimile:      (415) 882-0300

Kathryn B.  Ashton (*pro hac vice pending*)
kathryn.ashton@dentons.com
Joanne Caceres (*pro hac vice pending*)
joanne.caceres@dentons.com
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606-6361
Telephone:     (312) 876-8000
Facsimile:      (312) 876-7934

Attorneys for Plaintiff CANOPY GROWTH USA LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANOPY GROWTH USA LLC., a Delaware Limited Liability Company;<br><br>Plaintiff,<br><br>v.<br><br>RESEARCH AND DEVELOPMENT FARMING, LLC, a California Limited Liability Company; STEVEN SAMRA;<br><br>Defendants. | Case No. 3:19-cv-4095<br><br>**COMPLAINT FOR:**<br><br>**(1)  BREACH OF CONTRACT**<br>**(2)  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**(3)  FRAUD**<br>**(4)  CONVERSION**<br>**(5)  UNJUST ENRICHMENT**<br>**(6)  DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Canopy Growth USA LLC, a Delaware limited liability company ("Canopy Growth" or "Plaintiff"), by and through its undersigned Counsel, files its Complaint against Defendant Research and Development Farming, LLC ("R&D Farming" or "Defendant/s") and Steven Samra ("Samra" or "Defendant/s").  In support of its Complaint, Canopy Growth alleges as follows:

1. Canopy Growth is an industrial hemp company operating legally under U.S. federal law since the passage of the Agricultural Improvement Act of 2018.  Canopy Growth is a leader in industrial hemp cultivation in the U.S., currently cultivating approximately four-thousand acres of industrial hemp over seven states, and is scaling operations for large-scale industrial hemp processing, education, clinical research, and innovation.  As part of its cultivation strategy, Canopy Growth has partnered with U.S. farmers in several states with approved industrial hemp programs, including California, to grow industrial hemp for Canopy Growth and support these farmers' entry into the hemp commodity market.

2. Defendants R&D Farming and Steven Samra are in the business of farming agricultural commodities, and purported to possess the skill required to grow, harvest, and pack agricultural commodities, including industrial hemp, at a commercial scale.

3. In April 2019, Canopy Growth entered into a Custom Hemp Farming and Purchase Agreement ("the Agreement[1]") with Defendants for Defendants to custom farm, harvest, and pack hemp crops for the 2019 growing season, which Canopy Growth would purchase pursuant to the terms provided in the Agreement and described in detail on the Agreement's Schedule B.  The Agreement is a "time is of the essence" contract as the season for growing hemp for production in 2019 is limited.

4. As part of the Agreement, Canopy Growth paid in advance and deposited $1,692,320 to Defendants account for expenditures necessary for Defendants to obtain acreage, and for ground preparation including mulch, irrigation, fertilizer, labor, equipment rentals, and water (as outlined in Schedule B).  The deposit was not a "blank check" for use by Defendants in any manner or for any purpose, rather, Defendants were to account and invoice all expenditures for the sole purpose of

---

[1] Canopy Growth does not attach the Agreement and supporting exhibits to this Complaint as the actual terms are confidential and reflect protected trade secrets.

growing and packaging hemp for sale to Canopy Growth. Defendants are required under the Agreements to not only maintain books and accounting but make the records available to Plaintiff for inspection.

5. After substantial performance delays, in breach of the Agreement, which Canopy Growth allowed Defendants to attempt to cure, in July, upon request by Canopy Growth, R&D Farming provided the check register accounting for the $1,692,320 operating deposit paid by Canopy Growth. The records shock the conscious and confirmed Canopy Growth's concerns. Over $725,000 was drawn from the operating account with only vague descriptions or no invoices or supporting documents. Amounts in the thousands were withdrawn from the earmarked Canopy checking account in cash, with no description. It is estimated Defendants have potentially misappropriated nearly $1,000,000, in operating costs deposited by Defendants.

6. During the course of the relationship between Canopy Growth and Defendants, from April to July 2019, Defendants engaged in serial breaches of contract and made false promises, representations, assurances, and warranties concerning the status of the acreage, Defendants' preparation for planting of the hemp crops and use of the corporate account. Canopy Growth provided notice of such breaches and attempted to assist Defendants in curing. In reality, preparations were woefully inadequate and rendered the breaches incurable.

7. In April 2019, Defendants represented that R&D Farming had access to the acreage specified in the Agreement (500 acres) and was capable of growing commercial hemp crops at the scale and quality required under the Agreement including all undertakings necessary to prepare the soil for hemp seedlings delivered by Canopy Growth. Defendants representations were patently false. Defendants did not have leases or access to hundreds of acres that were warranted in the Agreement and was without the knowledge or skill to properly prepare and cultivate the hemp crops.

8. In May and June 2019, Canopy Growth repeatedly worked with Defendants to understand the status of the fields and assist in any way possible so that Defendants could cure the deficiencies. When it became clear that the promised 160 acres in Fresno County was not secured by Defendants, Canopy Growth met with Defendants and gave a performance deadline of June 18, 2019, to complete field preparation work at the Nicolaus Ranch. With the goal of determining Defendants'

capabilities and to establish a realistic acreage target for the season.  By June 29, 2019, it was clear Defendants would be unable to prepare and plant 500 acres and Canopy Growth and Defendants agreed to reduce the acreage to 350 acres, eliminating Fresno County completely.

9. Pursuant to the Agreement, on June 27, 2019, Canopy Growth delivered approximately 55,000 hemp seedlings to Defendants.  Due to lack of proper preparation and lack of knowledge/skill, Defendants failed to plant the seedlings for over 5 days, and when planted at the Gridley location, Defendants negligently left many exposed soil plugs, all of which resulted in Defendants killing 22,000, or 40%, of the plants, as confirmed by Canopy Growth's visit to inspect the farm on July 6, 2019.  In response to this, Canopy Growth proposed to Defendants that the entire contract acreage should be reduced to approximately 200 acres to ensure some level of success for the 2019 season.  Even though Defendants received this offer, they did not provide Canopy Growth with a clear response accepting the offer to amend the Agreement.

10. Due to Defendants lack of skill and knowledge and failure to timely prepare the soil and irrigation systems and failure to cure prior breaches to the Agreement, it was impossible for Defendants to meet the obligations under the Agreement to finish planting by July 15, 2018 per the Planting Schedule (providing an original planting deadline of July 1st for Gridley Ranch, which the parties later extended to July 15th).  Due to Defendants misappropriation of operating capital deposits made by Canopy Growth, Defendants were also unable to assure Canopy Growth that there is adequate financing to further perform Defendants' contractual obligations, compounding Canopy Growth's concerns that Defendants have failed to pay subcontractors.  Accordingly, Canopy Growth told Defendants to stop all efforts on July 10, 2019.

11. The hemp seedlings and plants delivered to Defendants, and originating seed varietals, are proprietary, highly confidential protected intellectual property of Canopy Growth and affiliates.  Under the Agreement, Canopy Growth has title to the hemp plants for the entire growth cycle and can exercise its right to enter Defendants properties to take possession of the crops.  Canopy Growth accordingly seeks immediate access to the Gridley location to take possession of the 20 acres of remaining live plants.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 267-4000

12. As a result of Defendants' actions, Canopy Growth has suffered millions of dollars in damages and potentially will suffer irreparable harm if the remaining live plants continue to be misused by Defendants.

**PARTIES**

13. Canopy Growth is a Delaware limited liability company with its principal place of business and headquarters in Evergreen, Colorado.

14. Canopy Growth cultivates, processes, and aims to create distinct consumer goods derived from industrial hemp for the U.S. commercial market.

15. Defendant R&D Farming, LLC, upon information and belief, is a corporation organized and existing under the laws of the State of California, with its registered address at 800 J Street 441, Sacramento, California 95814.

16. Steven Samra is the managing member of R&D Farming and a citizen of California.

17. Defendants are in the business of growing, harvesting, and packing farm commodities, including hemp biomass, which refers to the dried plant matter that is used for the production of refined hemp products, such as CBD oil, textiles, hemp plastics, and others.

18. Canopy Growth is informed and believes and on that basis alleges as follows: (a) that Steven Samra dominates and controls the operations and activities of R&D Farming, LLC concerning the matters alleged herein, for his own interest and benefit and in disregard of the separate corporate interest and benefit of R&D Farming, LLC; (b) that there exists, and at all times mentioned herein existed, by reason of such domination and control of R&D Farming, LLC by Samra a unity of interest between R&D Farming, LLC and Samra with respect to the matters alleged herein, such that any individuality and separateness between them have ceased, and respecting the fictional separateness of the two would work a fundamental inequity and unfairness on Canopy Growth. For these reasons, Samra should be deemed the alter ego of R&D Farming, LLC, with respect to the matters alleged herein, and R&D Farming, LLC's, conduct as alleged herein should be deemed in law and equity equally the conduct of Samra and both should be deemed equally liable for the conduct of one another as alleged herein below.

## JURISDICTION AND VENUE

19. This Court may exercise jurisdiction over Defendant because Defendant regularly transacts business in California, and the causes of action alleged herein arose in whole or in part in California.

20. Jurisdiction is proper in this Court pursuant to Title 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

21. R&D Farming is a California resident and grows, harvests and packs farm commodities in and from the State of California.

22. Steven Samra is an individual and is a California resident.

23. As stated above, Canopy Growth is a Delaware limited liability company with its principal place of business and headquarters in Evergreen, Colorado.

24. Canopy Growth primarily conducts its California business in San Francisco and the Agreement that is the subject of this dispute was negotiated in San Francisco.

25. Venue is proper in this district pursuant to Title 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this judicial district and negotiated the Agreement that is the subject of this action in San Francisco, California.

## BACKGROUND

**Hemp Industry in the U.S.**

26. Section 7606 of the Agricultural Act of 2014 authorizes institutions of higher education or state departments of agriculture, if authorized under State law, to "grow[] or cultivate[ industrial hemp] for purposes of research conducted under an agricultural pilot program or other agricultural or academic research." 7 U.S.C. § 5940.

27. The Agriculture Improvement Act of 2018, Pub.L. 115-334 (the "2018 Farm Bill"), removed hemp and extracts of hemp from the Controlled Substances Act schedules.

28. California is one of many states that currently authorizes the commercial production of industrial hemp within the State provided an entity registers with its local county agricultural commissioner.

29. On information and belief, Defendants are properly registered to grow industrial hemp in the state of California.

**Canopy Growth Enters Into Agreement with Defendant**

30. Canopy Growth believes hemp has the potential for many commercial uses including industrial applications, cosmetics and beauty, health and wellness, and medical products. Canopy Growth has orchestrated planting thousands of acres of high quality hemp seeds to meet the potential uses for hemp crops. As part of its operations, Canopy Growth entered into contracts with U.S. farmers to grow hemp biomass at commercial scale.

31. On or about April 10, 2019, Canopy Growth entered into an Agreement with Defendants in which Defendants agreed to grow and harvest 500 acres of industrial hemp.

32. The contract acres were in three locations: (1) Sutter County (Nicholaus Ranch - 166 acres); (2) Butte County (Gridley Ranch - 237 acres); and Fresno County (175 acres). The acreages presented by the Defendants was in excess of the contract target of 500 acres because they represented gross property acres and not net planted acres. The intent was to adjust future draws in good faith to reflect the true net acre target of approximately 500 acres.

33. Per the Agreement, Defendants were solely responsible for furnishing and paying for all operating costs, including, services, material, land, equipment, seed, herbicides, pesticides, other chemical products, labor, water, supplies, and other items related to the planting, cultivating, irrigating, weeding, thinning, hoeing, dusting, spraying, fertilizing, and otherwise growing hemp crop to completion, and to the harvesting of hemp crop in accordance with the specifications set out in the Agreement.

34. Canopy Growth agreed to purchase the entirety of the hemp biomass produced at an agreed upon price, set at an amount to cover Defendants' operating costs plus a premium payment for hemp biomass meeting testing and quality requirements as further specified in the Agreement.

35. Such payment was to be provided in "Draws" with the last Draw paid at acceptance and delivery of the Hemp Crop (a term defined by the Agreement).

36. The Agreement also provided for Pre-Payment in the form of a deposit from Canopy Growth to Defendants that would offset the first Draw. Per the Agreement, this deposit would pay

for pre-planting operations, including rent and farming costs associated with preparing the fields for planting, including irrigation supplies, ground preparation, labor, and equipment rental, all of which are critical and necessary early steps to successful planting.  If these steps are not done timely, properly and completely crops will not grow successfully.

37. The Parties agreed to an approximate price per acre for the operational funds that Canopy Growth would pay Defendants.  Any deviations from the agreed upon model budget were to be discussed thoroughly with, and approved by Canopy Growth.  These amounts are reflected in an invoice provided to Defendants showing the breakdown of expenses per acres by site and a total amount for the 578 gross (500 net) acres of $1,692,320.00.

**Defendants Immediately Misuse Funds**

38. On or about May 6, 2019, Canopy Growth paid Defendants $1,692,320 deposit by wire transfer to Wells Fargo Bank in care of the Defendants' attorney, Noel Knight, Law Offices of Noel Knight.

39. On information and belief, on or about May 10, 2019, Defendants paid $16,000 of this deposit to its Attorney Noel Knight.  Already, Defendants had misused the funds.  Payment for legal counsel is not among the enumerated items in either the Agreement or the itemized invoice.  Canopy Growth did not become aware of this payment until July 9, 2019.

**Defendants Delay and Failure to Meet Original Planting Schedule**

40. On or about May 24, 2019, Canopy Growth sent Defendants an initial planting schedule, and reminded Defendants that it should order the necessary supplies to stay on schedule. Canopy Growth also reminded Defendant that per the Agreement Defendants needed to provide a detailed accounting of its receipts in order to receive the second Draw.

41. Two full weeks later, on or about June 6, 2019, Defendants began to prepare the acreage in Butte County at Gridley Ranch.

42. On or about June 13, 2019, employees of Canopy Growth met with executives of R&D Farming, including Chief Executive Officer Steven Samra, Chief Operating Officer Craig Dadian ("Dadian"), and Chief Finance Officer Ed Glazebrook ("Glazebrook").

43. At this meeting, it was communicated to Canopy Growth that the original Fresno County property could not be secured by Defendants.

44. Defendant's CEO Samra stated that he had a "handshake deal" with the landlord, but the landlord attempted to charge him an "exaggerated hemp tax."

45. Defendants knew at the time of contracting with Canopy Growth they had not secured the Fresno County acreage.

46. During this meeting, the Parties agreed verbally to a performance deadline of June 18, 2019, to complete field preparation work at the Nicolaus farm. This would, in turn, determine the Defendants' capacity to plant the Fresno County acres and maintain the 500 acre contract target.

47. Canopy Growth again stressed the need for a detailed accounting of Defendants' expenditures. Both Samra and Glazebrook assured Canopy Growth that such an accounting would be provided and that there were necessary and sufficient funds to execute the 500 acres per contract.

**Defendants Delays and Failure to Meet the Revised Planting Schedule**

48. Due to the earlier delays, the original planting schedule was no longer possible. On or about June 17, 2019, Canopy Growth agreed to a revised planting schedule to further facilitate Defendants in curing their breach of the Agreement.

49. On or about June 24, 2019, under the revised planting schedule, Canopy Growth was scheduled to deliver hemp seedlings to the Gridley Ranch property, but was forced to delay such shipment due to the field lacking proper ground preparation for planting.

50. Three days later, Canopy Growth delivered approximately 55,000 hemp seedlings to Defendants at Gridley Ranch.

51. Defendants informed Canopy Growth that it had 25 acres pre-irrigated and ready for the plants. Despite this representation, the hemp seedlings stayed out of the ground for five full days.

52. By July 5, 2019, Defendants had planted approximately 32 acres at Gridley Ranch.

53. On July 6, 2019, Canopy Growth discovered that nearly 40% of the seedlings it had delivered were dead due to ill-prepared fields and negligent planting (e.g. plugs left uncovered by soil and not planted deep enough).

54. Canopy Growth understands that in addition to leaving the plants out of the ground for five days, Defendants initially started planting the seedlings with equipment that was unfamiliar to Defendants. The misuse of this equipment contributed to the high number of plant deaths.

55. Canopy Growth estimates that about 40%, or 22,000 plants, were killed by Defendants' failure to timely prepare the soil and misuse of equipment.

**Canopy Growth Learns of Prohibited Expenditures by Defendants**

56. On July 9, 2019, Canopy Growth received information from Defendant's CFO, detailing expenditures by Defendants. Defendants' records show approximately $1.3 million dollars' worth of expenditures or missing funds.

57. Approximately $700,000 to $1 million of the expenditures listed were for expenses either not related to growing hemp crop for Canopy Growth and/or have no invoices.

58. These expenditures were not permitted under the Agreement.

59. These expenditures were concealed by Defendants, who had repeatedly made assurances that all expenditures of the deposited capital funds were proper.

**Continued Underperformance and Misrepresentations by Defendants**

60. On July 10, 2019, employees of Canopy Growth met with CEO Samra, COO Dadian and CFO Glazebrook in person at Gridley Ranch.

61. Canopy Growth's employees were able to observe that ground preparation and irrigation were still progressing very slowly at Gridley Ranch.

62. Defendants represented to Canopy Growth at this meeting that Nicolaus Ranch was progressing on schedule. In reality, Canopy Growth discovered that cosmetic changes had been made on Nicolaus Ranch, included tilling of the outer perimeter, to make it appear that more progress had been made than was actually performed.

63. As of that date, Canopy Growth's employees estimate that Nicolaus Ranch still needed a week or more of preparation to be ready for planting. The planting season for 2019, however, would end in 5 days. It was impossible for Defendant to plant the Nicolaus Ranch acres in time to produce the agreed upon hemp crop for this acreage.

64. Canopy Growth refused to ship more hemp seedlings to Defendants given that planting could not be accomplished by the contract deadline. Canopy Growth was unwilling to continue to lose seedlings at such a high rate due to Defendants' failure to use the capital deposit for soil preparation and Defendants' lack of skill, knowledge, and experience.

65. Additionally, Defendants cannot plant sufficient crops (approximately 140 acres) by the deadline to offset Canopy Growth's $1.69 million deposit.

66. On information and belief, Defendants have not expended the deposit money as necessary to complete even the remaining possible acreage.

67. On information and belief, Defendants have not paid major subcontractors. Because Defendants have misused the funds provided under the Agreement, Defendants may not have sufficient funds to pay these subcontractors.

68. Defendants have breached the contract by failing to meet the planting schedules, misusing deposit funds, failing to secure the agreed to acreage, failing to properly finance the plantings, failing to adequately prepare the ground for planting, failing to keep adequate records and accounting, and failing to have the warranted skill, knowledge and experience to plant, grow, harvest and pack commercial hemp crops. With planting season at a close, Defendants cannot cure the aforementioned breaches and grow the agreed upon acres of hemp crop.

69. Defendants, by their actions, have repudiated the Agreement because it is now impossible for Defendants to perform under the Agreement.

70. Defendants have also committed several acts of fraud, including: misrepresentations about its capabilities to grow hemp crops, misrepresentations regarding access to acreage and water, misrepresentations about the status of materials and ground preparation; and misrepresentations and misuse of the capital deposit from Canopy Growth.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

71. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

72. Defendants repeatedly and materially breached the Parties' Agreement by, among other things: failing to secure agreed acreage, failing to meet the planting schedules, misusing deposit funds; failing to adequately substantiate its expenditures as required by the Agreement; and failing to perform services timely, adequately, satisfactorily, and in accordance with the Agreement.

73. Despite repeated requests and attempts by Canopy Growth to assist Defendants to cure, Defendants failed to comply with their obligations under the Agreement.

74. Each of the breaches alleged herein constituted separate and independent material breaches of the Agreement.

75. Canopy Growth has duly performed all promises required of it and satisfied all conditions under the Agreement and/or is excused from having to do those things because of Defendants' conduct.

76. As a direct and proximate result of the material breaches by Defendants, Canopy Growth has suffered and incurred substantial damages in specific amounts to be proven at trial including, but not limited to, funds Canopy Growth paid to Defendants under the Agreement, funds spent by Canopy Growth to secure other product with third parties, loss of 55,000 hemp seedlings, and all other damages, including incidental damages, required to remedy and mitigate Defendants' breaches.

**SECOND CLAIM FOR RELIEF**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

77. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

78. Implied in every contract is a covenant of good faith and fair dealing.

79. Canopy Growth has complied with all of the conditions under the Agreement and/or is excused from having to do those things because of Defendants' conduct.

80. Defendants have unfairly interfered with Canopy Growth's right to receive the benefits of the Agreement.

81. The actions of Defendants set forth in this Complaint have violated the implied covenant of good faith and fair dealing contained in the Agreement.

82. As a proximate result of the conduct of Defendants, Canopy Growth has been damaged in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### FRAUD

83. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

84. As alleged above, the parties entered into the Agreement with Defendants on the basis that Defendants had the ability to custom grow, harvest, and deliver approximately 500 acres of hemp biomass in the 2019 growing season.

85. Defendants represented they would expend the deposit provided by Canopy Growth in accordance with Defendants' promises, representations, and warranties and as detailed in the invoice.

86. Defendants also represented on numerous occasions that Defendants had land and water rights to 500 acres and that the 500 acres was or would be ready for planting of the hemp crop.

87. The representations made by Defendants were in fact false when made. The true facts were, when the Defendants made these representations, that it knew them to be false and made these representations with the intention to deceive and defraud Canopy Growth and induce Canopy Growth to act in reliance on these representations in the manner herein alleged.

88. At the time Defendants made the promises to Canopy Growth, Defendants had no intention of performing them. Instead, Defendants used funds for personal or other business expenses not related to the Agreement.

89. Canopy Growth, at the time these representations were made by Defendants and at the time Canopy Growth took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Canopy Growth was induced to, and did, pay $1,692,320 to Defendants pursuant to the Agreement.

90. Had Canopy Growth known the actual facts, it would not have taken such action. Canopy Growth's reliance on Defendants' representations was justified because, among other things, Defendants held themselves out to be and represented R&D Farming as capable of planting, growing, harvesting and packing the "Hemp Crop" as provided in the Agreement.

91. As a proximate result of the fraudulent conduct of Defendants, Canopy Growth has been damaged in an amount to be proven at trial.

92. The conduct alleged above was an intentional misrepresentation, deceit and/or concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Canopy Growth of property, legal rights, or otherwise causing injury and was despicable conduct that subjected Canopy Growth to unjust hardship in conscious disregard of Canopy Growth's rights, so as to justify an award of exemplary and punitive damages.

**FOURTH CLAIM FOR RELIEF**
**CONVERSION**

93. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

94. Canopy Growth paid a deposit to Defendants of $1,692,320, to be used as provided in the Agreement based on Defendants' representations, warranties and promises. Canopy Growth also provided 55,000 hemp seedlings to Defendants.

95. Canopy Growth was at all times the rightful owner of the $1,692,320 and the 55,000 hemp seedlings, entrusted in Defendants' custody and care.

96. Defendants have intentionally and substantially interfered with Canopy Growth's property by failing to account for the use of the monies, misusing the funds for personal and other unrelated expenditures; and have destroyed and/or interfered with Canopy Growth's taking possession of the remaining 55,000 hemp seedlings.

97. Canopy Growth in no manner consented to Defendants' misappropriation of its funds or destruction and continued possession of the seedlings.

98. Canopy Growth has performed all the conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the Agreement.

99. As a direct and proximate result of Defendant's conversion of Canopy Growth's monies and seedlings, Canopy Growth has suffered significant damages, in an amount to be determined at trial.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
(415) 267-4000

**FIFTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

100. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

101. As a result of the breaches by and wrongful acts of Defendants, Defendants have been unjustly enriched at the expense of Canopy Growth. Defendants have derived and continue to derive a benefit from failing to perform their contractual obligations under the Agreement.

102. Defendants are under an obligation to pay Canopy Growth all amounts by which they have been unjustly enriched, which is a sum not less than $1,692,320.

**SIXTH CLAIM FOR RELIEF**

**DECLARATORY AND INJUNCTIVE RELIEF**

103. Canopy Growth incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth herein.

104. An actual controversy has arisen and now exists between Canopy Growth and Defendants. As described above, Defendants have taken possession of 55,000 hemp seedlings. Defendants cannot perform their duties under the Agreement to grow and process 500 acres of commercial hemp. And have breached the terms of the Agreement. Canopy Growth has title to the seedlings which are proprietary and the result of confidential research and development protected by trade secret. The Agreement is clear that upon termination of the contract, Canopy Growth is entitled to return of all plant materials upon request. Defendants have refused to comply.

105. Canopy Growth seeks a judicial determination that it has full ownership rights to the remaining hemp seedlings held by Defendants and can immediately take possession of the plants.

106. Canopy Growth further seeks an injunction prohibiting Defendants from use, altering, sale, engineering, use of the genetics, or transfer of the hemp seedlings, or any part of the plants. A judicial determination is necessary to prevent the unauthorized use or misuse of Canopy Growth and affiliate's proprietary seedlings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Canopy Growth USA, LLC prays for the following relief:

a. For all actual and compensatory damages according to proof, but at the minimum for the specific amount of $1,692,320;

b. For conversion of Canopy Growth's funds and 55,000 hemp seedlings, and that Defendants have been unjustly enriched, in an amount no less than $1,692,320;

c. For punitive and exemplary damages to be determined by the Court after a full hearing on the merits;

d. For Canopy Growth's attorneys' fees;

e. For Canopy Growth's costs in this suit;

f. For prejudgment interest to the maximum extent recoverable by contract or law; and

g. Declaratory and injunctive relief that the remaining seedlings are the property of Canopy Growth and Canopy Growth may take immediate possession of the plants;

h. For such other relief as this Court may deem necessary or appropriate.

Pursuant to Local Rule 3-6(a), Plaintiff demands trial by jury.

Dated: July 17, 2019                    Respectfully submitted,

DENTONS US LLP

By:  /s/ Laura L. Geist
         LAURA L. GEIST

Counsel for Plaintiff
Canopy Growth USA, LLC.